# STATE OF NORTH CAROLINA

**WAKE** County

**EXHIBIT**

**A**

*File No.*

14 CVS 4849

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>ERIN ELIZABETH BRAY<br>*Address*<br>255 TIMBERLANDS DRIVE<br>*City, State, Zip*<br>LOUISBURG　　　　　NC　　27549 | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**<br><br>G.S. 1A-1, Rules 3, 4 |

**VERSUS**

| *Name Of Defendant(s)*<br>Town of Wake Forest<br>Mark Williams | *Date Original Summons Issued*<br>04-16-2014 |
|---|---|
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1*<br>Mr. Mark Williams<br>Town Manager, Town of Wake Forest<br>301 SOUTH BROOKS STREET<br>WAKE FOREST　　　　NC　27587 | *Name And Address Of Defendant 2* |
|---|---|

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>MIKAEL R. GROSS<br>751 GATEWAY PARK DRIVE<br>SUITE 103<br>RALEIGH　　　　　NC　27601 | *Date Issued*<br>04-16-2014 | *Time*<br>(( | ☒ AM<br>☐ PM |
|---|---|---|---|
| | *Signature* | | |
| | ☐ Deputy CSC　　☐ Assistant CSC　　☐ Clerk Of Superior Court | | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* | ☐ AM<br>☐ PM |
|---|---|---|---|
| | *Signature* | | |
| | ☐ Deputy CSC　　☐ Assistant CSC　　☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

Case 5:14-cv-00276-FL　Document 1-1　Filed 05/12/14　Page 1 of 33

(Over)

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he is an attorney- at-law licensed to practice in the State of North Carolina, is attorney for the Plaintiff, and is a person of such suitable age and discretion as to be competent to serve process.

That on the 16th day of April 2014, he served a copy of the attached **CIVIL SUMMONS AND COMPLAINT** by delivering, by depositing in the United States mail, with appropriate postage affixed, said Motion to the Defendants at the addresses listed below:

Mr. Mark Harris
Town Manager
Town of Wake Forest
301 South Brooks Street
Wake Forest, NC 27587-2932

Mikael R. Gross
Attorney for Plaintiff
N.C. State Bar # 32701
751 Gateway Park Drive
Suite 103
Raleigh, NC 27601
p. (919) 791-5887
f. (919) 803-3800
grosslawoffices@gmail.com
www.grosslawoffices.com

# STATE OF NORTH CAROLINA

File No.<br>V004849

____WAKE____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| ERIN ELIZABETH BRAY | |

Address
255 TIMBERLANDS DRIVE

City, State, Zip
LOUISBURG      NC    27549

**CIVIL SUMMONS**

☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3, 4

## VERSUS

Name Of Defendant(s)
TOWN OF WAKE FOREST

VIRGINIA JONES

Date Original Summons Issued
04-15-2014

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| TOWN OF WAKE FOREST | MS. VIRGINIA JONES |
| 301SOUTH BROOKS STREET | DIRECTOR OF HUMAN RESOURCES |
| | 301 SOUTH BROOKS STREET |
| WAKE FOREST    NC 27587 | WAKE FOREST    NC    27587 |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | |
|---|---|---|---|
| MIKAEL R. GROSS | 04-15-2014 | 11 | ☒ AM ☐ PM |
| 751 GATEWAY PARK DRIVE | Signature | | |
| SUITE 103 | *SS* | | |
| RALEIGH    NC 27601 | ☒ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | | |

| ☐ ENDORSEMENT (ASSESS FEE) | Date Of Endorsement | Time | ☐ AM ☐ PM |
|---|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Signature | | |
| | ☐ Deputy CSC    ☐ Assistant CSC    ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have* **MANDATORY ARBITRATION** *programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|
| | | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

Case 5:14-cv-00276-FL   Document 1-1   Filed 05/12/14   Page 4 of 33

# STATE OF NORTH CAROLINA

File No. 14CV004849

_____WAKE_____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>ERIN ELIZABETH BRAY | |
| *Address*<br>255 TIMBERLANDS DRIVE | **CIVIL SUMMONS** |
| *City, State, Zip*<br>LOUISBURG       NC    27549 | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |

**VERSUS**

G.S. 1A-1, Rules 3, 4

| | |
|---|---|
| *Name Of Defendant(s)*<br>JEFFREY M. LEONARD<br>CHIEF OF POLICE<br>WAKE FOREST POLICE DEPARTMENT | *Date Original Summons Issued*<br>04-15-2014 |
| | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| CHIEF JEFFREY M. LEONARD<br>WAKE FOREST POLICE DEPARTMENT<br>225 SOUTH TAYLOR STREET<br>WAKE FOREST      NC 27587 | |

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*<br>MIKAEL R. GROSS<br>751 GATEWAY PARK DRIVE<br>SUITE 103<br>RALEIGH      NC 27601 | *Date Issued*<br>04-15-2014 | *Time*<br>11 | ☒ AM<br>☐ PM |
|---|---|---|---|
| | *Signature* | | |
| | ☐ Deputy CSC   ☐ Assistent CSC   ☐ Clerk Of Superior Court | | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time* | ☐ AM<br>☐ PM |
|---|---|---|---|
| | *Signature* | | |
| | ☐ Deputy CSC   ☐ Assistant CSC   ☐ Clerk Of Superior Court | | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 6/11
© 2011 Administrative Office of the Courts

(Over)

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

# STATE OF NORTH CAROLINA

File No. **14 004849**

_____ WAKE _____ County

In The General Court Of Justice
☐ District ☒ Superior Court Division

## GENERAL
### CIVIL ACTION COVER SHEET
☒ INITIAL FILING   ☐ SUBSEQUENT FILING

Rule 5(b), General Rules of Practice for Superior and District Courts

**Name And Address Of Plaintiff 1**
ERIN ELIZABETH BRAY
255 TIMBERLANDS DRIVE

LOUISBURG    NC  27549

*FILED*
2014 APR 15  A 11: 05
WAKE COUNTY
BY _____

**Name And Address Of Plaintiff 2**

**Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)**
MIKAEL R. GROSS
751 GATEWAY PARK DRIVE
SUITE 103
RALEIGH    NC  27601

### VERSUS

**Name Of Defendant 1**
TOWN OF WAKE FOREST
301 SOUTH BROOKS STREET

WAKE FOREST    NC  27587

| Telephone No. 919-791-5887 | Cellular Telephone No. |
|---|---|

| NC Attorney Bar No. 32701 | Attorney E-Mail Address GROSSLAWOFFICES@GMAIL.COM |
|---|---|

**Summons Submitted** ☒ Yes ☐ No

☒ Initial Appearance in Case   ☐ Change of Address

**Name Of Defendant 2**
VIRINIA JONES
DIRECTOR OF HUMAN RESOURCES
301 SOUTH BROOKS STREET

WAKE FOREST    NC  27587

**Name Of Firm**
Law Offices of Mikael R. Gross

**FAX No.** 919-803-3800

**Summons Submitted** ☒ Yes ☐ No

**Counsel for**
☒ All Plaintiffs  ☐ All Defendants  ☐ Only *(list party(ies) represented)*

☒ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

*(check all that apply)*
☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNJF)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) *Assess Court Costs*
☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
☐ Dismiss (DISM) *Assess Court Costs*
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

*(check all that apply)*
☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☒ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☒ Other *(specify and list each separately)*
  1. Wrongful discharge in violation of public policy.
  2. Discrimination based on sex [pregnancy].
  3. Discrimination based on disability.
  4. Civil Conspiracy.

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752) or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts

(Over)

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☐ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)

- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☐ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)

- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)*
  1. Damages for discrimination based on sex (pregnancy).
  2. Damages for discrimination based on disability.
  3. Punitive damages for discrimination.
  4. Back-pay and benefits.
  5. Damages for emotional distress.

| Date | Signature Of Attorney/Party |
|---|---|
| 4/15/2014 | *(signature)* |

## FEES IN G.S. 7A-308 APPLY

Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

## PRO HAC VICE FEES APPLY

Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| No. | ☒ Additional Defendant(s)    ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| 1 | Jeffrey M. Leonard, Chief of Police, Wake Forest Police Department | ☒Yes ☐No |
|  |  | ☐Yes ☐No |
|  |  | ☐Yes ☐No |
|  |  | ☐Yes ☐No |
|  |  | ☐Yes ☐No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*

AOC-CV-751, Side Two, Rev. 1/14
© 2014 Administrative Office of the Courts

NORTH CAROLINA ) IN THE GENERAL COURT OF JUSTICE
        )   SUPERIOR COURT DIVISION
WAKE COUNTY  )   14 CVS _____

2014 APR 15 A 11: 03

ERIN ELIZABETH BRAY WAKE COUNTY, C.S.C.
   Plaintiff,  BY

| | |
|---|---|
| ERIN ELIZABETH BRAY | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TOWN OF WAKE FOREST; a political | ) |
| sub-division of the State of North | ) |
| Carolina; MARK WILLIAMS, | ) |
| Town Manager of the Town of Wake | ) |
| Forest, in his official capacity; VIRGINIA | ) |
| JONES, Director of Human Resources for the | ) |
| Town of Wake Forest, in her official capacity; | ) |
| JEFFREY M. LEONARD, Chief of Police for | ) |
| the Town of Wake Forest, in his official | ) |
| capacity, | ) |
| Defendants. | ) |

COMPLAINT
FOR
WRONGFUL DISCHARGE
BASED ON:

SEX DISCRIMINATION
(PREGNANCY); and

VIOLATIONS OF THE
AMERICANS WITH
DISABILITIES ACT
AS AMENDED.

[JURY TRIAL DEMANDED]

---

   NOW COME the Plaintiff, by and through Counsel, and move the Court as follows and shows:

## PART I. PARTIES

1) That Plaintiff, Erin Elizabeth Bray, is a resident and citizen of Franklin County, North Carolina.

2) That Defendant Town of Wake Forest is a unit of local government which is a political sub-division of the State of North Carolina created by Charter of the N.C. General Assembly in Chapter 273 of the Session Laws of 1973 and regulated pursuant to Chapter 160A of the N.C. General Statutes.

3) That Defendant Mark Williams is the Town Manager of the Town of Wake Forest and as such is the executive administrator of the day to day business operations of the Town of Wake Forest including the development and implementation of policies and procedures and hearing appeals of adverse action in disciplinary and discrimination matters. Defendant denied Plaintiff's request for reconsideration of her termination based on the premise that she was being discriminated against because of her pregnancy and resulting medical disability.

4) That Defendant Virginia Jones is the Director of Human Resources for the Town of Wake Forest and at all times relevant to this matter provided guidance to the Defendant Chief of Police, Jeffrey M. Leonard, regarding the laws related to the

termination of Plaintiff, including the Pregnancy Discrimination Act and the American with Disabilities Act, as amended, and participated in recommending the termination of Plaintiff, witnessed Plaintiff's termination, and denied Plaintiff's request for limited-duty or light-duty, and leave without pay.

5) That Defendant Jeffrey M. Leonard is the Chief of Police of the Town of Wake Forest Police Department and at all times relevant in this matter was the department head with the authority to provide limited duty, light duty, or leave without pay to the Plaintiff and is the person who terminated Plaintiff's employment.

## PART III: JURISDICTION AND VENUE

6) That Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

7) That neither Plaintiff nor Defendants have initiated, participated as a party, or participated in any other capacity, in litigation concerning the termination of Plaintiff by Defendants, except in this action.

8) That pursuant N.C. Gen. Stat. §§ 1-77, 1-539.16, 7A-243, and 143-422.2, the Superior Court of Wake County is the proper venue because the Defendants are the unit of local government, a municipality in said County, and officials of the unit of local government, and they are thereby residents, and the cause of action arose against a public officer in the performance of official duties in Wake County.

9) That this Court has proper subject matter and personal jurisdiction over this matter.

## PART IV: CHRONOLOGY OF EVENTS

10) That Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

11) That Plaintiff was hired by Defendants on or about April 23, 2013.

12) That at all times relevant to this action, Plaintiff was employed by Defendants.

13) That Plaintiff had completed her initial employment requirements and her field training requirements successfully.

14) That Plaintiff was assigned to patrol duties and was required to investigate offenses and take other enforcement action to enforce the laws of the United States, State of North Carolina, and the Town of Wake Forest.

15) That Plaintiff had been performing her duties and the essential functions of her position without incident, disciplinary action, or job related performance issues.

16) That Plaintiff had never been disciplined by Defendants for any reason, including job performance, discipline, or any other policy violation while employed by Defendants.

17) That Plaintiff was nearing the end of her probationary employment period of six (6) months and was scheduled to be made a permanent employee on October 23, 2013.

18) That on or about Wednesday, September 4, 2013, Plaintiff discovered she was pregnant by a home pregnancy test. Plaintiff notified Sergeant Richards by telephone before the beginning of the 7PM shift.

19) That on or about Wednesday, September 4, 2013, Plaintiff reported to work for the 7PM shift and spoke with Sgt. Richards and Lt. Morris. Plaintiff was advised by her superiors to contact the Human Resources Department (HR) about procedure and to continue working unless a medical doctor's note advised otherwise.

20) That on or about Thursday, September 5, 2013, Plaintiff went to Village Family Care in order to get confirmation of the pregnancy.

21) That on or about Thursday, September 5, 2013, Plaintiff provided a note related to her diagnosis from the doctor to Sgt. Richards by email for his records and Plaintiff's personnel file.

22) That on or about Friday, September 6, 2013, Plaintiff was requested in writing by Mitzi Franklin in HR to provide a second, more specific doctor's note indicating job functions that could or could not be performed.

23) That the letter from Mitzi Franklin also advised Plaintiff to use sick leave until she could obtain the second doctor's note and the HR could determine what limitations would apply to the Plaintiff's ability to perform her essential duties.

24) That on or about Monday, September 9, 2013, Plaintiff received the second doctor's note from Village Family Care and faxed it to Mitzi Franklin at HR. The notes stated that Plaintiff should be placed in a light duty position, preferably clerical or administrative for the duration of her pregnancy.

25) That on or about Wednesday, September 11, 2013, Plaintiff was contacted by Mitzi Franklin and Virginia Jones, Director of Human Resources for the town, who advised Plaintiff that there were no light duty positions available at the police department, or in town government at all, and that Plaintiff would be placed on short-term disability.

26) That on or about Wednesday, September 11, 2013, HR advised Plaintiff that they would provide Plaintiff the appropriate forms for short-term disability and advised Plaintiff to send the forms back as soon as possible to avoid a gap between the end of Plaintiff's sick leave and the implementation of her short-term disability.

27) That on or about Wednesday, September 11, 2013, Plaintiff was advised that she was not eligible to use vacation hours until Plaintiff had been employed with the Town of Wake Forest for six consecutive months.

28) That Plaintiff would have been eligible to use vacation leave on October 23, 2013 had she not been terminated on September 26, 2013.

29) That on or about Monday, September 16, 2013, Plaintiff faxed the short-term disability forms provided by HR to Village Family Care. (Original office placing Plaintiff on restricted duty)

30) That on or about Wednesday, September 18, 2013, Plaintiff submitted her portion of the short-term disability forms to Mitzi Franklin in HR, including additional OB-GYN doctor information. (Wake Medical Center Women's Center)

31) That on or about Saturday, September 21, 2013, Plaintiff received a letter from Virginia Jones requesting Fitness for Duty Evaluation from Wake Medical Center Women's Center (OB-GYN).

32) That on or about Monday, September 23, 2013, Village Family Care faxed their portion of the disability forms to UNUM (the Disability Insurance Company).

33) That on or about Monday, September 23, 2013, Plaintiff faxed Virginia Jones' request to Wake Medical Center Women's Center along with a detailed job description.

34) That on or about Monday, September 23, 2013 Plaintiff emailed Mitzi Franklin to advise her that Village Family Care sent their portion of the disability forms to UNUM instead of HR and that Wake Medical Center Women's Center would be faxing their note to HR.

35) That on or about Tuesday, September 24, 2013, Wake Medical Center Women's Center faxed the medical restriction note directly to HR. On or about Thursday September 26, 2013, Plaintiff received a copy of the letter faxed from Wake Medical Center Women's Center to HR.

36) That on or about Tuesday, September 24, 2013, Plaintiff received a phone call from Mitzi Franklin and Virginia Jones, in HR, who were both speaking with Plaintiff by speaker phone and advised Plaintiff that Wake Medical Center Women's' Center needed to fill out a separate portion of disability paperwork for the short-term disability procedure.

37) That HR advised Plaintiff that she would need a Fitness for Duty evaluation from her medical provider before she would be allowed to return to work.

38) That Plaintiff repeatedly asked Defendant Virginia Jones, Director of HR, what information was needed from her medical provider to constitute a Fitness-for-Duty assessment. Ms. Jones was very vague and said she needed them to answer the question she put in the request; whether Plaintiff could perform the duties of a police officer.

39) That Defendant Virginia Jones also mentioned that it sounded like Plaintiff would not able to perform her duties as a police officer and "that's what [Plaintiff] was hired to do."

40) That Defendant Virginia Jones, Director of HR, discussed with Plaintiff taking Plaintiff off of payroll and "letting [her] go."

41) That Defendant Virginia Jones, Director of HR, also made the statement, "I hope you're not recording me or copying everything I'm saying down." Plaintiff advised Ms. Jones that she was trying to provide her medical provider what HR needed to accommodate Ms. Jones' request for a Fitness-for-Duty evaluation. Plaintiff advised Virginia Jones that the letter requesting the Fitness-for-Duty evaluation doesn't describe what a Fitness-for-Duty evaluation is or the format she needs to report to be in for her records.

42) That Defendant Virginia Jones stated that she "[has] never known of a doctor who doesn't know what a fitness for duty evaluation is" and "that if they don't know they can Google it".

43) After the conversation with Defendant Virginia Jones, Plaintiff called Sgt. Richards. Sgt. Richards was on vacation and unable to be reached

44) That Plaintiff contacted her former field training officer (FTO) who advised the next person in the chain of command was Cpt. Abbacchi. Plaintiff contacted Cpt. Abbacchi and left a message with Audrey, the secretary. Abbacchi did not return Plaintiff's phone call.

45) That on or about Wednesday, September 25, 2013, Plaintiff received a voicemail and email message from Defendant Virginia Jones that stated she "heard [Plaintiff] called Captain Abbacchi" and that Jones requested a meeting with the Defendant Chief Jeffrey M. Leonard, the Captain, herself, and Plaintiff to be present.

46) That Plaintiff advised Defendant Virginia Jones that Plaintiff would be able to attend the meeting at 2PM on September 26, 2013.

47) That Defendant Virginia Jones then emailed Plaintiff to request that Plaintiff bring all of her department-issued equipment to the meeting.

48) That Plaintiff attempted to call Sgt. Richards and Lt. Morris, Plaintiff's direct superiors in her chain of command, to learn about any additional information related to the purpose of the meeting. Sgt. Richards did not answer and Lt. Morris stated he had no knowledge of situation.

49) That Plaintiff then received from Mitzi Franklin, in the U.S. Mail, a packet describing Plaintiff's short-term disability benefits and requested Plaintiff to fill out a

certification for Blue Cross Blue Shield Affordable Care act guidelines and to have it signed and returned by September 30, 2013.

50) That, additionally, on or about Wednesday September 25, 2013, Defendants sent out to all Wake Forest Police Department employees a detailed form that is mandated by HR to be used when getting a Fitness-for-Duty evaluation. Plaintiff had requested this form from Defendant Jones and had been told "Google" it.

51) That the Fitness-for -Duty evaluation form was created and sent out to town employees after the decision had already been made to terminate Plaintiff.

52) That on or about Thursday, September 26, 2013, at 2PM, Plaintiff attended the meeting as requested. Present at the meeting were Defendant Virginia Jones, Mitzi Franklin, Defendant Chief Jeffrey M. Leonard, Capt. Abbacchi and Plaintiff.

53) That at the beginning of the meeting before anyone spoke, Captain Abbacchi stated that there is a voice recorder in the middle of the table and then orally noted the date and time of the meeting and the name of everyone who was present.

54) That Cpt. Abbacchi then stated Plaintiff's employment was being terminated immediately.

55) That Cpt. Abbacchi then stated Plaintiff had the opportunity to "resign or be let go".

56) That Plaintiff advised that she would not resign but that she would take the Termination letter from Cpt. Abbacchi.

57) That Plaintiff took the letter but refused to sign it.

58) That Plaintiff was asked if she had any questions, and Plaintiff asked what the reason was for terminating her employment. Cpt. Abbacchi advised Plaintiff the termination was based on Plaintiff's inability to perform the essential functions of her position as a police officer.

59) That Plaintiff left the meeting to meet Sgt. Brown to turn in her equipment. Defendants called Plaintiff back into the meeting room to provide Plaintiff with an F-5 Form (Report of Separation from a Law Enforcement Agency).

60) That Plaintiff advised Defendant Chief Jeffrey M. Leonard that he could check the block "officer refused to sign" and that she would take a copy of the F-5 Form as well.

61) That Plaintiff turned in all department-issued gear to Sgt. Brown and left the department premises.

62) That on or about October 1, 2013, Plaintiff timely appealed her termination to the Town Manager, Defendant Mark Williams, and based her appeal in discrimination based on the Pregnancy Discrimination Act and the Americas with Disabilities Act as Amended.

63) That on or about October 8, 2013, Plaintiff, by and through Counsel, made an informational request to Defendant Virginia Jones regarding information about Plaintiff's termination due to Plaintiffs inability to complete her probationary period due to her medical condition and pregnancy.

64) That on or about October 9, 2013, Defendant Mark Williams denied the appeal on the grounds that Plaintiff was not entitled to appeal her termination as a probationary employee, in violation of the Town of Wake Forest's Personnel Policy on Page 43 Section 5.

65) That in the response letter from Defendant Mark Williams, issued October 9, 2013, Williams made no findings of fact or policy conclusions as to the allegations of discrimination but dismissed the appeal without further investigation based on Plaintiff's probationary status.

66) That on or about October 22, 2013, Plaintiff timely filed a formal complaint with the Equal Employment Opportunity Commission.

67) That on or about October 22, 2013, in a letter from Defendant Virginia Jones, Defendants refused to provide the information requested in paragraph 57 above and stated they looked forward to the formal EEOC Complaint.

68) That on or about October 22, 2013, Plaintiff, by and through counsel, made a public information request of Defendant Virginia Jones regarding policies and procedures related personnel issues including, but not limited to, leave without pay, hiring and termination of employees, and polices regarding the completion of probationary period employment.

69) That on or about November 7, 2013, Defendants responded to the public information request and provided the requested information.

70) That on January 17, 2014, the United States Equal Employment Opportunity Commission (EEOC) issued a "right to sue" letter, incorporated herein by reference, to Plaintiff giving her 90 days to bring this action before a court of competent jurisdiction.

## PART V: CLAIMS FOR RELIEF
### (FIRST CLAIM FOR RELEF)
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC §§ 2000E(k), 2000e-2(a)(1), AND (k), FOR EMPLOYMENT DISCRIMINATION SEX (PREGNANCY).

71) That Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

72) That Title VII of the Civil Rights Act of 1964, as amended ("Title VII") prohibits discrimination on the basis of sex, including on the basis of pregnancy and related medical conditions. 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1).

73) That at all times relevant hereto, Plaintiff was an employee and Defendants were employers within the meaning of Title VII.

74) That under the Pregnancy Discrimination Act of 1978, which amended Title VII, employers are required to afford pregnant workers the same treatment and benefits in employment as "other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

75) That prior to her pregnancy, Plaintiff was qualified for her position and was meeting her employer's legitimate expectations. She had been employed by Defendants as a Police Officer.

76) That Defendants violated Title VII and the Pregnancy Discrimination Act when they took adverse employment actions against Plaintiff by refusing to grant her reasonable accommodation request and forcing her to take sick leave, and then terminating her employment, even though they routinely grant accommodations to other non-pregnant police officers who are similar to Plaintiff in their ability to work.

77) That on or about January 7, 2014, Defendant Virginia Jones responded, on behalf of the Defendants, to the EEOC in a position statement, incorporated herein by reference, on Page 3, in Section II, Background, that the Town of Wake Forest has no light duty policy in place.

78) That in the position statement, Defendants state that they do, however, attempt to place employees who have been injured on the job in temporary light duty assignments.

79) That in the position statement Defendants also provided the names of two male officers who were provided with light/limited duty for periods of time from three months to almost two years.

| Name | Title | Gender | Date of hire | Status | Date of injury |
|------|-------|--------|--------------|--------|----------------|
| John VanNess | Police Officer | Male | 03/14/1998 | Current Limited Duty Assignment - Communications | Sept. 2012- Ongoing |
| John-Ta Pulley | Police Officer | Male | 04/23/2013 | Temporary Limited Duty Assignment – Evidence Room | May 2013 Returned to Full Duty in July 2013 |

80) That while the Town of Wake Forest may claim it has no policy which allows limited or light duty, the U.S. Supreme Court has held, in <u>Barrett v. U.S. Airways, Inc.</u>, 535 U.S. 391, (2002), that an employer's policy, even if disability neutral, is no reason for not complying with the requirements of the Pregnancy Discrimination Act or the Americans with Disabilities Act as Amended.

81) That Defendants' practice of denying accommodation requests by pregnant workers while granting them to other similarly temporarily disabled male police officers has a disparate impact on pregnant women and is not justified by business necessity.

## (SECOND CLAIM FOR RELIEF)
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. §§ 12101 et seq.

82) That Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

83) That The Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101 et seq., prohibits employers from discriminating against people with disabilities in employment, including failing to make reasonable accommodations to known physical limitations of otherwise qualified individuals with disabilities, unless the employer can demonstrate that the accommodation would impose an undue hardship.

84) That in 2008, Congress enacted the ADA Amendments Act of 2008, Pub. L. No. 110-325. This set of amendments broadened the list of major life activities of which a substantial limitation amounts to a disability to include lifting and bending, as well as the operation of reproductive functions.

85) That the EEOC, in interpreting the amendments, explained that impairments related to pregnancy, such as gestational diabetes, pregnancy-induced hypertension, and asthma are temporary disabilities covered by the ADA as amended.

86) That threatened miscarriage is an impairment related to pregnancy for purposes of the ADA. While Plaintiff was subject to the doctor's restrictions, she was substantially limited in the major life activities of lifting, bending, running, or jumping and was therefore entitled to a reasonable accommodation under the ADA, absent a showing of undue hardship.

87) That Defendants knew or had reason to know of Plaintiff's disability based on at least three doctors' notes from two different practices that placed her on limited duty, recommending clerical work, and specifically stating that she should not lift more than 20 to 25 pounds, run, jump, or have any potential physical altercations.

88) That on or about September 11, 2013, Defendant Virginia Jones inquired with Defendant Chief Jeffrey Leonard whether he had any "light duty assignment[s] (administrative/clerical preferred) for Erin Bray? This is a non-workers' compensations event."

89) That for Defendants to inquire about and discuss such light duty, after denying a policy regarding light duty even exists for a non-workers' compensation event shows that Defendants knew Plaintiff had a disability, that it was a covered disability, and that light or limited duty was appropriate.

90) That Plaintiff was a qualified individual who had a disability during the period in question. The reasonable accommodation that Plaintiff requested would not have imposed an undue hardship on Defendants as they had made the same type of accommodation within the past year for a male officer hired at the same time Plaintiff was hired.

91) That Plaintiff received a short-term disability claim form initiated by HR on or about September 25, 2013.

92) That by denying Plaintiff a reasonable accommodation and forcing her to take unpaid leave until all sick-leave that was available was taken and refusing to allow her to take annual leave that she had accrued during her employment, Defendants violated Plaintiff's rights under the Americans with Disabilities Act as amended.

93) That by denying Plaintiff a reasonable accommodation and terminating Plaintiff's employment with the Town by refusing to allow Plaintiff to take leave without pay as provided for in the Town of Wake Forest Policy Manual on page 24 in Section 18, Defendants violated Plaintiff's rights under the Americans with Disabilities Act as amended.

94) That Defendants further violated Plaintiffs rights under the ADA as amended because they regarded Plaintiff as having a physical impairment as that term is defined by the ADA. Defendants told Plaintiff that she could not work with restrictions, that no light duty positions were available, and required presented Plaintiff with a FMLA Non-Eligibility Letter form.

## (THIRD CLAIM FOR RELIEF)
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY PURSUANT TO N.C. GEN. STAT. §143-422.2

95) That Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

96) That in Lorbacher v. Housing Authority of the City of Raleigh, 127 N.C. App. 663, 493 S.E.2d 74, (1997), the North Carolina Court of Appeals concisely stated the rule of wrongful discharge as "[a] valid claim for wrongful discharge exists when an at-will employee is discharged for an *unlawful reason or in contravention of public policy.* [Emphasis Added].

97) That Plaintiff's discharge is couched in a determination that Plaintiff was unable to perform the essential functions of her position based on information in three separate doctors' notes limiting her physical abilities based on Plaintiff's pregnancy and

related medical issues in violation of the Pregnancy Discrimination Act and the Americans with Disabilities Act as Amended.

98) That Defendants termination of Plaintiff based on Plaintiff's pregnancy and temporary disability is in violation of N.C. Gen. Stat. § 143-422.2 which states:

"**§ 143-422.2. Legislative declaration.**
   It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.
   It is recognized that the practice of denying employment opportunity and discriminating in the terms of employment foments domestic strife and unrest, deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general."

99) That Plaintiff was not fired for any reason arising from job performance or disciplinary action and as a result Defendants cannot support the termination based on at-will employment since the termination is based in violations of both state and federal law governing discrimination against pregnant women and persons with disabilities.

### (FOURTH CLAIM FOR RELIEF)
### CIVIL CONSPIRACY

100) That Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

101) By the actions contained herein and alleged in all proceeding paragraphs, Defendants committed a civil conspiracy against Plaintiff.

102) That at Common Law a "civil conspiracy" is an agreement between two or more parties to deprive a third party of legal rights or deceive a third party to obtain an illegal objective.

103) That Defendants did collude and conspire to deprive Plaintiff of her employment, wages, leave, benefits, and future wages by discharging Plaintiff based on a temporary disability and pregnancy in violation of the Pregnancy Discrimination Act and the Americans with Disabilities as amended.

### PART VI: PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays the Court for relief as follows:

1) That this verified Complaint be taken as an affidavit upon which the Court may grant relief and base further Orders.

2) That Plaintiff be given a trial by jury on all matters that may be tried before a jury.

3) That Defendant be ordered to pay Plaintiffs' reasonable attorney's fees for the prosecution of this Complaint.

4) That an order be issued declaring that Defendants violated Plaintiff's rights to be free from discrimination on the basis of pregnancy under Title VII of the Civil Rights Act of 1964, the Pregnancy Discrimination Act of 1978, the Americans with disabilities Act as amended, and the anti-discrimination polices of North Carolina in N.C. Gen. Stat. §143-422.2.

5) That an order be issued enjoining Defendants from denying a reasonable accommodation, including light duty or limited duty work, to Plaintiff in the future while granting similar accommodations to other workers with lifting, running, jumping, or other physical restrictions.

6) That an order declaring that Defendants violated Plaintiff's right to a reasonable accommodation under the Americans with Disabilities Act, as amended.

7) That an order awarding Plaintiff economic, punitive, and emotional distress damages, past and future, against Defendants for their unlawful conduct, in an amount in excess of $25,000.

8) That an order awarding Plaintiff all interest, costs, attorneys' fees, and litigation expenses as provided for under Title VII, the Americans with Disabilities Act and the Pregnancy Discrimination Act and that the Form F-5b submitted to the N.C. Criminal Justice Education and Training Standards Commission be rescinded.

9) And for such further relief as the Court deems just and proper.

This, the 9th day of April 2014.

Mikael R. Gross
Attorney for Plaintiff
N.C. State Bar # 32701
751 Gateway Park Drive
Suite 103
Raleigh, NC 27601
p. (919) 791-5887
f. (919) 803-3800
grosslawoffices@gmail.com

| NORTH CAROLINA | ) | |
|---|---|---|
| | ) | **VERIFICATION** |
| WAKE COUNTY | ) | |

**Erin Elizabeth Bray**, first being duly sworn, deposes and says:

That she is the Plaintiff herein; that she has read the foregoing **COMPLAINT** and knows the contents thereof, and that the contents are true to the best of her own knowledge, except to matters stated on information and belief, and to those matters she believes them to be true.

*Erin Elizabeth Bray*

ERIN ELIZABETH BRAY

Sworn to and subscribed before me
This 9 day of April, 2014.

*Vernice H. Robertson*

Notary Public

My Commission Expires: *June 17, 2018*

(NOTARY SEAL)

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he is an attorney- at-law licensed to practice in the State of North Carolina, is attorney for the Plaintiff, and is a person of such suitable age and discretion as to be competent to serve process.

That on the 15th day of April 2014, he served a copy of the attached **CIVIL SUMMONS AND COMPLAINT** by delivering, by depositing in the United States mail, with appropriate postage affixed, said Motion to the Defendants at the addresses listed below:

Town of Wake Forest
c/o Town Clerk Deeda Harris
301 South Brooks Street
Wake Forest, NC 27587-2932

Ms. Virginia Jones
Human Resources Director
Town of Wake Forest
301 South Brooks Street
Wake Forest, NC 27587-2932

Chief Jeffrey M. Leonard
Wake Forest Police Department
Town of Wake Forest
225 South Taylor Street
Wake Forest, NC 27587-2932

Mikael R. Gross
Attorney for Plaintiff
N.C. State Bar # 32701
751 Gateway Park Drive
Suite 103
Raleigh, NC 27601
p. (919) 791-5887
f. (919) 803-3800
grosslawoffices@gmail.com
www.grosslawoffices.com

EEOC Form 161 (11/09)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To:

**Ms. Erin Elizabeth Bray**
**255 Timberlands Drive**
**Louisburg, NC 27549**

From:

**EEOC, Raleigh Area Office**
**434 Fayetteville Street, Suite 700**
**Raleigh, NC 27601**

| | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 433-2014-00101 | **Alvan L. Robinson,**<br>**Senior Investigator** | **(919) 856-4082** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

JAN 17 2014

**Thomas M. Colclough,**
**Director**

(Date Mailed)

Enclosures(s)

cc:

**Ms. Virginia H. Jones, Human Resources Director**
**TOWN OF WAKE FOREST**
**301 S. Brooks Street**
**Wake Forest, NC 27587**

**Mr. Mikael R. Gross, Attorney**
**Law Office Of Mikael R. Gross, PA**
**751 Gateway Park Drive, Suite 103**
**Raleigh, NC, 27601**



# TOWN *of*
# WAKE FOREST

301 S. Brooks Street
Wake Forest, NC 27587
t 919.435.9400

www.wakeforestnc.gov

January 7, 2014

JAN 1 0 2014

<u>**VIA CERTIFIED MAIL**</u>

Thomas M. Colclough
Area Office Director
U. S. Equal Employment Opportunity Commission
434 Fayetteville Street, Suite 700
Raleigh, NC  27601

RE:     <u>**Erin Bray v. The Town of Wake Forest**</u>
         **EEOC Charge No.:  433-2014-00101**

Dear Mr. Colclough:

The Town of Wake Forest submits this position statement in response to allegations made by Charging Party Erin Bray.  We respectfully request that other than for review and use by the Commission as part of its endeavor to resolve the instant Charge, the information not be used without the express written consent of the Town of Wake Forest.[1]

As we understand the Charge, Erin Bray is claiming that the Town of Wake Forest discriminated against her based on her sex.  Specifically, Ms. Bray alleges that the Town of Wake Forest Police Department terminated her employment because she was pregnant.

The Town of Wake Forest was advised that Ms. Bray obtained legal counsel on or about October 1, 2013.  Mikael R. Gross, Attorney at Law, contacted the Town's outside counsel directly without any notification to the Town.  He was later informed that he needed to contact the Human Resources Director directly.  On October 8, 2013, Mr. Gross contacted the Town to request information related to two male Police Officers who were allowed to work limited duty assignments – one in the Communications Center and one in the evidence room. The circumstances surrounding those two individuals will be discussed below.  Mr. Gross continued to request additional information from the Town related to policies and employee statistical data.

---

[1] The Town of Wake Forest considers this document and all information and documents contained herein or attached hereto confidential and private.  We respectfully request that these items not be released to or examined by the Charging Party.  If for some reason you believe that disclosure is warranted, we respectfully ask to be consulted prior to dissemination of these items so that we may properly and timely voice our consent, objections, or concerns.

1

The Town of Wake Forest Police Department is an equal opportunity employer comprised of 79 employees (65 sworn, 14 civilians). The Department is committed to serving the community to enhance the quality of life of Town residents. It seeks to nurture public trust by holding to the highest standards of performance and ethics. The officers of the Department are determined to serve as a deterrent to crime and seek to develop relationships with community groups, and establish connections with residential and business organizations. The Department is dedicated to its personnel and reflects it through the provision of continuous training, educational development, and career enhancement opportunities.

The Wake Forest Police Department has and shall continue to provide service of the highest quality to its community and foster community partnerships in crime prevention. The Town will reasonably accommodate any employee to the extent that it does not compromise their safety and health or the safety and health of others.

The Town of Wake Forest strongly supports women in law enforcement. We appreciate the special and valuable contributions they make. Our goal is to continue to recruit and retain women to serve as police officers. With this being said, the Town of Wake Forest denies the allegation of discrimination submitted by Ms. Bray. Ms. Bray learned that she was pregnant and expected the Town to treat her more favorably than non-pregnant employees.

## I. Employment Policies

The Town of Wake Forest has work rules and policies in place which prohibit discrimination in the workplace. The Town vigorously implements and abides by the Equal Employment Opportunity work rules and policies outlined in its Personnel Policy. Article VI. Section 6 specifically provides:

> It is the policy of the Town to foster, maintain, and promote equal employment opportunity. The Town shall select employees on the basis of the applicant's qualifications for the job and reward them, with respect to compensation and opportunity for training and advancement, including upgrading and promotion without regard to age, sex, race, color, religion, national origin, physical and mental disability, veteran status, political affiliation, or marital status.

See Exhibit 1 (Policies and Procedures Manual page 17).

## II. BACKGROUND

Ms. Bray started working for the Town of Wake Forest on April 23, 2013 as a Police Officer. Ms. Bray went through New Employee Orientation (N.E.O.) on April 23, 2013. During the NEO Ms. Bray was provided with a copy of the Town's Personnel Policy (See Exhibit 2, Personnel File,

2

page 17). Ms. Bray was informed both verbally and in writing that new employees were subject to a six (6) month introductory/probationary period. During the introductory period supervisors are expected to monitor a new employee's performance and communicate with the employee concerning performance progress.

See Exhibit 1 (Policies and Procedures Manual page 5).

The Town's Policies and Procedures Manual also contains information concerning eligibility requirements for leave under the Family Medical Leave Act (FMLA).

See Exhibit 1 (Policies and Procedures Manual pages 31-34).

The Town of Wake Forest does not have a light duty policy. However, the Town has attempted to place employees who have been injured on the job (in-service) in temporary light duty assignments. The Town seeks light duty assignments (when possible) for employees who are injured on the job since they would otherwise receive workers' compensation benefits. The Town of Wake Forest seeks to get these employees back to work and limit or end the wage replacement benefits available through workers' compensation. Therefore, the Town reserves light duty work/assignments for those employees who are coming back from workers' compensation leave. The Town does not provide light duty work for personal/temporary medical conditions.

Two Police officers who both suffered in-service/on the job injuries were placed in limited duty assignments in keeping with the above practice. The employees are:

| Name | Title | Gender | Date of Hire | Status | Date of On the Job Injury |
|------|-------|--------|--------------|--------|----------------------------|
| John VanNess | Police Officer | Male | 03/14/1998 | Current Limited Duty Assignment - Communications | Sept 2012 Ongoing |
| Jon-Ta Pulley | Police Officer | Male | 04/23/2013 | Temporary Limited Duty Assignment – Evidence Room | May 2013 Returned to Full Duty in July 2013 |

Ms. Bray was hired along with three male Police Officer Recruits on April 23, 2013.

| Name | Title | Gender | Date of Hire | Termination Date |
|------|-------|--------|--------------|-------------------|
| Erin Bray | Police Officer | Female | 04/23/2013 | 09/26/2013 |

3

| Ian Dillard | Police officer | Male | 04/23/2013 | 05/22/2013 |
| Jon-Ta Pulley | Police Officer | Male | 04/23/2013 | N/A |
| Alex Sims | Police Officer | Male | 04/23/2013 | N/A |

Patrol Officers are expected to, among other things, patrol streets in a police car or on foot; check doors and windows, examine premises of unoccupied residences or buildings, respond to calls for assistance, complaints, suspicious activity, domestic disputes, loud and disruptive behavior, investigate traffic accidents, and issue traffic citations. Ms. Bray was provided with a copy of the job description for a Town of Wake Forest Police Officer.

See Exhibit # 3 (Police Officer Job Description).

On or about September 4, 2013, at approximately 4:45 PM, Ms. Bray called Sergeant Richards on his work cell phone while he was at home. The squad was scheduled to return to work on this date at 7:00 PM for the night shift after having been off for two days. According to Sergeant Richards, Ms. Bray informed him that she had taken two home pregnancy tests and both were positive. Sergeant Richards said he congratulated her. He said Ms. Bray then asked him what she should do next. Sergeant Richards said he told her that he would see her when she came in for work that evening, and after roll call they would inform the Watch Commander. According to Sergeant Richards, Ms. Bray then said that when she worked for New Hanover County Sheriff's Office, she was put on light duty once she told them she was pregnant. Sergeant Richards said he also told Ms. Bray to contact Human Resources to inform Human Resources about her status.

According to Sergeant Richards, Ms. Bray reported to work but then left work at 4:30AM indicating that she was sick.

See Exhibit #4 (Written Statement of Sergeant Richards Dated November 14, 2013).

On or about September 5, 2013, Ms. Bray called Human Resources and spoke to me, Virginia H. Jones, Human Resources Director. She informed me that she had taken a home pregnancy test that indicated a positive result. She asked me if the Town of Wake Forest would allow her to work light duty. I explained to her that we would not consider a light duty assignment without some documentation from a physician. She then told me that when she was with New Hanover County Sheriff's Office they immediately placed her on light duty when she told them she was pregnant and she did not have to provide medical documentation. I shared with her that the Town of Wake Forest required documentation. Ms. Bray then told me that she was going to see a doctor and would follow up with me then. I informed her that whatever documentation she received should be delivered to Mitzi Franklin, Senior Human Resources Analyst. Ms. Franklin is the Town's FMLA/Disability/HIPAA Coordinator.

4

On or about September 5, 2013, Ms. Bray did not report to work. She provided Sergeant Richards with a note from Novant Health Village Family Care. She did not provide a copy of the note to Human Resources as requested. The Chief of Police, Jeffrey Leonard, provided a copy to Human Resources. The note indicated that Ms. Bray was "pregnant and should not participate in any potentially strenuous activities, including any activities that might lead to any confrontation or physical altercation. Light duty is recommended throughout the duration of her pregnancy."

See Exhibit # 5 (Novant Health Village Family Care Note Dated September 5, 2013).

On September 6, 2013, Ms. Franklin advised Ms. Bray via telephone and letter that the Town needed additional information/clarification since the doctor's note she provided did not indicate specific job functions that she could or could not perform.

See Exhibit #6 (Letter to Ms. Bray from Ms. Franklin Dated September 6, 2013).

Ms. Franklin faxed Novant Health Village Family Care a copy of the Town's Police Officer job description to assist with providing clarification related to the September 5, 2013 doctor's note. On or about September 9, 2013, Ms. Franklin received an updated doctor's note from Novant that read as follows:

> Erin is pregnant, as confirmed in our office on 9/5/13. I recommend that she
> modify her work activities to avoid any potential harm to her pregnancy. She
> is cleared to perform administrative tasks that involve sitting and clerical tasks,
> but should not do any activities that involve any heavy lifting (no more than
> 20 pounds), any strenuous exertion (should be able to talk in complete sentences),
> or that involve the potential for physical harm (such as interacting with suspected
> criminals).

See Exhibit # 7 (Novant health Village Family Care Noted Dated September 6, 2013).

Ms. Bray used sick leave while out. Ms. Franklin also sent Ms. Bray a short term disability application so that she could start that process. On September 10, 2013, the Human Resources Director contacted the Police Department to find out if there was any light duty work available that would fit within the limitations mentioned above. The response was that there was no light duty work available that would fit. (See exhibit #8 attached – E-mail correspondence).

On or about September 11, 2013, Human Resources informed Ms. Bray that there were no light duty assignments available in the Police Department. Sometime later we learned that Ms. Bray had decided to see another doctor. Upon learning this, on or about September 19, 2013, the Human Resources Director sent a letter to Ms. Bray requesting a fitness for duty evaluation from her current doctor. Included was a letter for her to give to her doctor and included a copy

5

of the Town's Police officer job description. Ms. Bray was also informed that she was not eligible for leave under the Family Medical Leave Act. Human Resources sent a Notice of Eligibility and Rights & Responsibilities to Ms. Bray dated September 19, 2013.

See Exhibit # 9 (FFDE Letters Dated September 19, 2013) and Exhibit #10 (FMLA Notice of Eligibility and Rights & Responsibilities).

On September 24, 2013, Ms. Bray's new doctor, WSP Women's Center sent the Town a note that stated: "Due to her current pregnancy state patient is limited to no running or jumping activities. She may return to work with limitations of no running, jumping or heavy lifting >25 lbs. As the pregnancy progresses the limitations may be lifting [sp] if condition resolves."

See Exhibit #11 (WSP Women's Center Note Dated September 23, 2013).

Human Resources representatives spoke to Ms. Bray on September 24, 2013 to let her know that WSP Women's Center needed to complete a portion of her disability paperwork. She then asked the Human Resources Director if she had everything she needed for the FFDE. She was informed that the note we received indicated that she was not fit for her job. She said she just didn't know what to do because she was not allowed to speak to her doctor and that she was only allowed to speak to the nurse. Ms. Bray then said that she did not mind if the Human Resources Director called her doctor directly. Ms. Bray was informed that we would need a signed release from her to follow up with her doctor. She agreed to sign a release but at 2:20 PM called the Human Resources Director to say that she had changed her mind about signing a medical release. Ms. Bray then stated that all of her doctor's had advised her that she could not work without limitations.

See Exhibit #12 (Virginia Jones handwritten notes of conversation with Ms. Bray on September 24, 2013.

### September 26, 2013 – Recommendation for Termination

After much deliberation on September 25, 2013, the Police Department decided to terminate Ms. Bray's employment or to allow her to voluntarily resign in light of the following:

- Ms. Bray was not able to perform the essential functions of a Police Officer.
- Ms. Bray was a probationary employee.
- Ms. Bray was not eligible for FMLA.
- No light duty assignments were available for employees with temporary medical conditions.

A meeting was scheduled with Ms. Bray on September 26, 2013. Present for the meeting were Chief Jeffrey Leonard, Captain Darren Abbacchi, Virginia Jones, Human Resources Director and

6

Mitzi Franklin, Senior Human Resources Analyst. Captain Abbacchi is the supervisor over Uniform Patrol. When the meeting was initially scheduled Ms. Bray had informed Human Resources staff that she planned to bring her attorney with her to the meeting. However she came alone. Captain Abbacchi led the meeting. He advised Ms. Bray that she was being dismissed due to being unable to perform the functions of police officer and because she was unable to successfully complete the probationary period. The department could not appropriately evaluate her performance.

Captain Abbacchi read the termination letter to Ms. Bray and offered her the opportunity to resign. She indicated that she was not going to resign and refused to sign the termination letter (a copy is included in exhibit 2 attached).

As a probationary employee Ms. Bray could not grieve the action taken against her.

### November 13, 2013 – EEOC Charge

On November 13, 2013, Ms. Bray filed the current Charge of Discrimination with the Equal Employment Opportunity Commission, claiming that she was discriminated against based on her sex, pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended.

III.    **LEGAL ANALYSIS**

    **ERIN BRAY'S CLAIM OF SEX DISCRIMINATION FAILS BECAUSE SHE CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION ON THE BASIS OF SEX, PREGNANCY.**

In order to establish a *prima facie* case of discrimination based on disparate treatment, a plaintiff must show "(1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin and (2) that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person." *Lightner v. City of Wilmington*, 545 F. 3d 260, 265 (4th Cir., 2008) (*Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir., 1985). See also EEOC Guidance related to pregnancy which provides: "If a woman is temporarily unable to perform her job due to a medical condition related to pregnancy or childbirth, the employer or other covered entity must treat her in the same way as it treats any other temporarily disabled employee. For example, the employer may have to provide light duty, alternative assignments, disability leave, or unpaid leave to pregnant employees if it does so for other temporarily disabled employees. "

The burden is on the plaintiff to show that she was treated differently than other similarly situated employees.

7

The Pregnancy Discrimination Act (PDA) of 1978 established pregnancy discrimination as a form of sex discrimination, prohibiting employers from singling out pregnant women for adverse treatment and from adopting policies with an adverse impact on them as a class. The PDA does not require employers to make special workplace accommodations for pregnant employees, and pregnancy is not a condition that qualifies for special treatment under the Americans with Disabilities Act.

Ms. Bray alleges that Chief Leonard informed her that she was discharged because there were no light duty assignments available. That is not true. Chief Leonard never had any conversations with Ms. Bray regarding her pregnancy or a light duty assignment.

Ms. Bray has not provided the names of any suitable comparables because none exist. The Police Department has provided light duty assignments to employees (VanNess and Pulley) who were injured on the job. The Town attempts to place employees who have been injured on the job (in-service) in temporary light duty assignments since they would otherwise receive workers' compensation benefits. The Town of Wake Forest seeks to get these employees back to work and limit or end the wage replacement benefits available through workers' compensation. Therefore, the Town seeks light duty work/assignments for those employees who are coming back from workers' compensation leave. The Town does not provide light duty work for personal/temporary medical conditions.

We valued Ms. Bray as an employee. However, Ms. Bray seemed of the opinion that because she was pregnant the Town was obligated to provide her with a light duty assignment. She told us on more than one occasion that when she was with the New Hanover County Sheriff's Office they placed her on light duty immediately upon learning that she was pregnant. We do not know the circumstances surrounding that decision so cannot comment on it. What we know for a fact is that Ms. Bray was not terminated because she was pregnant. She was terminated because according to her doctors she could not perform the essential functions of her probationary job.

IV.    CONCLUSIONS

In summary, there is no indication that Chief Leonard or the Town of Wake Forest took any disciplinary action against Ms. Bray based on any discriminatory motive. The Town of Wake Forest treated Ms. Bray fairly and with great patience. As such Ms. Bray's claim for sex, pregnancy, discrimination must fail.

We trust that we have provided you with the necessary information to dismiss Erin Bray's Charge with a no cause finding. If the Commission determines that it requires additional information, please let us know and we will submit any further responsive information desired.

8

Sincerely,

Virginia H. Jones, JD, SPHR
Human Resources Director

9

# Franklin, Mitzi

| | |
|---|---|
| **From:** | Leonard, Jeff |
| **Sent:** | Wednesday, September 11, 2013 3:23 PM |
| **To:** | Jones, Virginia |
| **Cc:** | Franklin, Mitzi |
| **Subject:** | RE: Confidential Matter - Bray |

**Sensitivity:** Confidential



At this time I have no light duty that fits.



**WAKE FOREST
POLICE DEPARTMENT**

Jeffrey M. Leonard
*Chief of Police*

225 S. Taylor Street
Wake Forest, NC 27587-2794
(919) 554-6150 Main
(919)435-9601 Office
(919)435-9607 Fax
www.wakeforestnc.gov

---

**From:** Jones, Virginia
**Sent:** Tuesday, September 10, 2013 10:01 AM
**To:** Leonard, Jeff
**Cc:** Franklin, Mitzi
**Subject:** Confidential Matter - Bray
**Sensitivity:** Confidential

Hello Chief Leonard:

Can you please let us know if you have a light duty assignment (administrative/clerical preferred) for Erin Bray?  This is a non-workers' compensation event.



**TOWN of
WAKE FOREST**
HUMAN RESOURCES

Virginia H. Jones, J.D., SPHR
*Human Resources Director*

301 S. Brooks Street
Wake Forest, NC 27587-2901
(919) 435.9491 phone
(919) 435-9497 fax
www.wakeforestnc.gov