IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-276-FL

| | | |
|---|---|---|
| ERIN ELIZABETH BRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOWN OF WAKE FOREST, a political | ) | |
| sub-division of the State of North | ) | |
| Carolina; MARK WILLIAMS, Town | ) | ORDER |
| Manager of the Town of Wake Forest, in | ) | |
| his official capacity; VIRGINIA JONES, | ) | |
| Director of Human Resources for the | ) | |
| Town of Wake Forest, in her official | ) | |
| capacity; and JEFFREY M. LEONARD, | ) | |
| Chief of Police for the Town of Wake | ) | |
| Forest, in his official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the motion to dismiss filed by defendants pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (DE 10). Plaintiff has responded, and defendants filed reply. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants in part and denies in part the motion.

## STATEMENT OF THE CASE

Plaintiff filed complaint in state court April 15, 2014, alleging claims for sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1) and (k); discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; wrongful discharge in

violation of public policy pursuant to N.C. Gen. Stat. § 143-422.2; and civil conspiracy. (Compl., p. 9, 19) (DE 1-1).

Defendants removed the case to this court May 12, 2014. On June 17, 2014, defendants filed the instant motion to dismiss, asserting that 1) plaintiff's complaint fails to state a claim on which relief may be granted; 2) plaintiff's ADA claim should be dismissed for lack of subject matter jurisdiction based on plaintiff's failure to exhaust administrative remedies; and 3) plaintiff's claims against defendants Mark Williams ("Williams"), Virginia Jones ("Jones"), and Chief Jeffrey M. Leonard ("Leonard") (collectively, "Individual Defendants") in their official capacities should be dismissed as duplicative of claims against defendant Town of Wake Forest ("the Town"). (Mot. To Dismiss, 1-2) (DE 10). Following issuance of the court's initial order on June 18, 2014, defendants filed a motion to stay further proceedings pending resolution of the instant motion to dismiss. The court ordered stay on July 9, 2014.

Plaintiff filed her response to the motion to dismiss on September 11, 2014. Two weeks later, defendants filed reply, along with a motion to strike the response as untimely. The court denied the motion to strike via text order issued October 30, 2014.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows: Plaintiff, a resident of Franklin County, North Carolina, was hired as a police officer to a six month term of probationary employment by defendants beginning April 23, 2013, and assigned to patrol duties. She was scheduled to become a permanent employee on October 23, 2013. On September 4, 2013, plaintiff discovered she was pregnant. She informed her superiors, and was advised to contact the Town's Human Resources ("HR") Department and continue working unless a doctor's note advised

2

otherwise. The following day, plaintiff obtained a note from her doctor, who was at that time a practitioner with Village Family Care. She presented the doctor's note to Mitzi Franklin ("Franklin"), an employee of the Town's HR Department, who directed plaintiff to obtain an additional doctor's note indicating the specific job functions that plaintiff could or could not perform. Franklin advised plaintiff to use sick leave until she could obtain the second doctor's note.

On September 9, 2013, plaintiff received the second doctor's note, stating that plaintiff "should be placed in a light duty position, preferably clerical or administrative for the duration of her pregnancy." (Compl., ¶ 24). Defendant Jones wrote an e-mail to defendant Leonard, asking if the Police Department had "a light duty assignment (administrative/clerical preferred)" for plaintiff, further stating that "[t]his is a non-workers' compensation event." (Compl., p. 33). Defendant Leonard replied, "[a]t this time I have no light duty that fits." (Id.). Franklin and defendant Jones then contacted plaintiff, stating that no light duty positions were available, and that plaintiff would be "placed on short-term disability." (Compl., ¶ 25). Plaintiff was further told that she would be ineligible for "vacation hours" until she had been employed for six consecutive months. (Id., ¶ 27).

On September 21, 2013, defendant Jones sent plaintiff a letter requesting that plaintiff provide a "Fitness for Duty" evaluation. (Id., ¶ 31). Three days later, Franklin and defendant Jones called plaintiff and reiterated their request for a "Fitness for Duty" evaluation. (Id., ¶¶ 36-37). Plaintiff alleges that she expressed confusion as to what information was needed for this evaluation, and that defendant Jones "was very vague and said she needed them [plaintiff's medical providers] to answer the question she put in the request; whether Plaintiff could perform the duties of a police officer." (Id., ¶ 38). Plaintiff alleges defendant Jones "mentioned that it sounded like Plaintiff

would not [be] able to perform her duties as a police officer and 'that's what [Plaintiff] was hired to do.'" (Id., ¶ 39).

That same day, Dr. Amantia Kennedy, plaintiff's obstetrician/gynecologist at Wake Medical Center Women's Center, faxed a note to the Town's HR Department, stating:

> Due to her current pregnancy state patient is limited to no running or jumping activities. She may return to work with limitations of no running, jumpin [sic] or heavy lifting > 25 lbs. As the pregnancy progresses the limitations may be lifting if condition resolves [sic].

(Compl. ¶ 35); (Pl's. Memo. In Supp. Re: Pl's. Resp., Ex. 4) (DE 22-4). Plaintiff alleges that the other doctors' notes she provided to the Town's HR Department imposed similar restrictions to "not lift more than 20 to 25 pounds, run, jump, or have any potential physical altercations." (Compl., ¶ 87). The complaint alleges that, under her doctors' restrictions, plaintiff was "substantially limited in the major life activities of lifting, bending, running, or jumping." (Id., ¶ 86).

The day after the fax was received, September 25, 2013, defendant Jones called plaintiff to request a meeting between plaintiff, defendants Jones and Leonard, and plaintiff's supervisor, Captain Darren Abbachi ("Abbachi"). At the meeting, plaintiff was informed that she was being terminated immediately, based on her "inability to perform the essential functions of her position as a police officer." (Id., ¶ 58). On October 1, 2013, plaintiff appealed her termination to defendant Williams, asserting that the action violated the PDA and ADA. Defendant Williams denied the appeal on the ground that plaintiff could not appeal her termination because she was only a probationary employee.

Plaintiff attaches and incorporates by reference a position statement which defendants provided to the EEOC January 7, 2014 ("Position Statement"). (Id., pp. 24-33). The Position Statement alleges that:

4

The Town of Wake Forest does not have a light duty policy. However, the Town has attempted to place employees who have been injured on the job (in-service) in temporary light duty assignments. The Town seeks light duty assignments (when possible) for employees who are injured on the job since they would otherwise receive workers' compensation benefits. The Town of Wake Forest seeks to get these employees back to work and limit or end the wage replacement benefits available through workers' compensation. Therefore the Town reserves light duty work/assignments for those employees who are coming back from workers' compensation leave. The Town does not provide light duty for personal/temporary medical conditions.

(Compl., p. 26). The Position Statement further alleges that the decision to terminate plaintiff was made on the grounds that 1) she "was not able to perform the essential functions of a Police Officer;" 2) she "was a probationary employee;" 3) she "was not eligible for the [Family Medical Leave Act];" and 4) "[n]o light duty assignments were available for employees with temporary medical conditions." (Id., p. 29).

The Position Statement discloses that two male officers had received limited duty assignments during the time of plaintiff's employment. Officer John VanNess ("VanNess"), who was hired March 14, 1998, and suffered injury in September 2012, was assigned to one limited duty assignment. VanNess remained on limited duty assignment at the time of the Position Statement. The other officer, Jon-Ta Pulley ("Pulley"), was hired with plaintiff on April 23, 2013. Pulley was injured in May 2013, and returned to full duty in July 2013.

## COURT'S DISCUSSION

A.    Standard of Review

1.    Rule 12(b)(1)

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain,

697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural motion as he would receive under a Rule 12(b)(6) consideration." Id. "[A]ll facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter jurisdiction, a court "may then go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations" without converting the matter to summary judgment. Adams, 697 F.2d at 1219; Kerns, 585 F.3d at 192.

2.      Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); see also Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating

6

the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

1.     Claims Against Individual Defendants

"An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). As such, suits against individuals in their official capacities should be dismissed as duplicative when the entity that those individuals serve is also named as a defendant. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."). North Carolina courts likewise have held redundant claims under state law brought against both an entity and employees of that entity in their official capacities. Wright v. Town of Zebulon, 202 N.C. App. 540, 543 (2010); Hobbs ex rel. Winner v. N.C. Dep't of Human Res., 135 N.C. App. 412, 420 (1999); see also Mullis v. Sechrest, 347 N.C. 548, 554-55 (1998) (recognizing that "official-capacity suits are merely another way of pleading an action against the governmental entity").

Individual Defendants are all officials of the Town. See Harrison v. Chalmers, 551 F. Supp. 2d 432, 437 (M.D.N.C. 2008) (finding claim for punitive damages against police chief and police officer in their official capacities was equivalent to a suit against the municipality); Moore v. City

7

of Creedmoor, 345 N.C. 356, 367 (1997) (holding that claim against police chief acting in his official capacity was redundant where city had been named as defendant); Wright, 202 N.C. App. at 543 (affirming dismissal of suit against police officers as duplicative of suit against town). Accordingly, because the Town is named as a defendant, plaintiff's claims against Individual Defendants in their official capacities are dismissed. Furthermore, because plaintiff has only sued these defendants in their official capacities, they are dismissed from this case.

2.     PDA

Passed in 1978, the PDA amended Title VII's definitions subsection to include new language addressing pregnancy. Young v. United Parcel Serv. Inc., — S. Ct. —, 2015 WL 1310745, at *5 (2015) (citing 42 U.S.C. § 2000e(k)). Consequently, courts analyze a PDA claim as a sex discrimination claim under Title VII. Young v. United Parcel Serv., Inc., 707 F.3d 437, 445 (4th Cir. 2013), vacated and remanded on other grounds, — S. Ct. —, 2015 WL 1310745; DeJarnette v. Corning, Inc., 133 F.3d 293, 297 (4th Cir. 1998).

In Title VII cases, a complaint need not allege specific facts establishing a prima facie case of discrimination in order to survive a motion to dismiss. McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., — F.3d —, 2015 WL 1088931, at *2 (4th Cir. 2015); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Nevertheless, the complaint is still required to allege facts sufficient to state a plausible claim for relief under the Title VII statute. McCleary-Evans, — F. 3d. —, 2015 WL 1088931, at *3.

"Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect . . . (known as 'disparate impact')." Ricci v. DeStefano, 557 U.S. 557, 577 (2009).

8

With respect to "disparate treatment," Title VII provides that employers may not "discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). With respect to "disparate impact," the statute prohibits the "use" of an "employment practice" that causes a "disparate impact on the basis of . . . sex." 42 U.S.C. § 2000e-2(k)(1)(A)(i); Lewis v. City of Chicago, Ill., 560 U.S. 205, 213 (2010).

In relevant part, the PDA amendments to the definitions subsection of Title VII consist of two clauses. The first specifies that the terms "because of sex" and "on the basis of sex," both of which appear in the "disparate treatment" and "disparate impact" statutory provisions above, also refer to pregnancy and childbirth conditions: "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The second clause provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . ." Id.

Thus to show disparate treatment on the basis of pregnancy, a complaint must allege facts sufficient to show that defendants discharged or otherwise discriminated against plaintiff "because of" her "pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000e(k); 2000e-2(a)(1); see McCleary-Evans, — F. 3d. —, 2015 WL 1088931, at *3. "Liability in a disparate-treatment case depends on whether the protected trait actually motivated the employer's decision." Young, — S. Ct. —, 2015 WL 1310745, at *5 (quoting Raytheon Co. v. Hernandez, 540 U.S. 44, 52 (2003).

The complaint is sufficient to state a claim for disparate treatment under Title VII. Plaintiff alleges that defendants terminated her after learning of her pregnancy and receiving her doctor's notes that she be restricted to limited duty, clerical work, lifting less than 20 to 25 pounds, running, jumping, or being involved in physical altercations. After hearing of these limitations, Jones allegedly stated that it "sounded like Plaintiff would not [be] able to perform her duties as a police officer." (Compl., ¶ 39). Defendants' Position Statement indicates that plaintiff was terminated after defendants received plaintiff's doctor's notes and concluded, based on plaintiff's physical limitations, that she "was not fit for her job" and was "not able to perform the essential functions of a Police Officer." (Compl., 29). Meanwhile, two male officers received light duty assignments when they experienced physical limitations as a result of injury. Officer VanNess received light duty for almost two years, a period of time that would appear to be longer than the light duty assignment which plaintiff might have required for her condition. (Compl., ¶ 79). Officer Pulley, who was hired the same date as plaintiff, was assigned light duty for three months. (Id.). Construing these facts in the light most favorable to plaintiff, they are sufficient to set forth a plausible claim that defendants discharged plaintiff because of her pregnancy or related medical conditions.

Defendants assert that the Town reserves light duty work for employees injured on the job, and that, because its policy treats pregnant women the same as other persons with temporary medical conditions, plaintiff's claim must fail. (Def's. Memo. In Supp. Re: Mot. To Dismiss, 7-8). The basis of defendants' allegations is not found within the complaint itself, but in defendants' Position Statement, attached to plaintiff's complaint. (Compl., p. 26). However, the court does not read plaintiff's reference and incorporation of defendants' Position Statement to amount to an adoption

of the allegations which defendants make in that document, to the extent those allegations pertain to the existence or nature of the Town's policy. Moreover, defendants' allegation that they have such a policy may be undermined by the email exchange between defendants Jones and Leonard, which suggests that the Town does not have a strict policy of reserving light duty assignments only for employees injured on the job. The existence, nature, and implementation of defendants' light duty policy is not clear from the complaint itself. Accordingly, without reaching the question of whether defendants' allegations regarding their light duty policy, if true, would be sufficient to defeat a disparate treatment claim, the court finds plaintiff's allegations of discrimination regarding disparate treatment are sufficient to survive the instant motion to dismiss.

Plaintiff has also alleged that defendants' "practice of denying accommodation requests by pregnant workers while granting them to other similarly temporarily disabled male police officers has a disparate impact on pregnant women." (Compl., ¶ 81). A disparate impact claim focuses "on the *effects* of an employment practice, determining whether they are unlawful irrespective of motivation or intent." Young, — S. Ct. —, 2015 WL 1310745, at *6; see also Ricci, 557 U.S. at 578. Where defendants' arguments for dismissal do not reach plaintiff's disparate impact theory, the court does not separately analyze whether plaintiff's allegations are sufficient to state a claim on this ground.

     3.     ADA

          a.     Exhaustion of Administrative Remedies

               i.     Exhaustion Requirement

The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, including the requirement that a plaintiff exhaust administrative

remedies before filing suit in federal court. 42 U.S.C. §§ 2000e-5(b), (f)(1); 12117(a); Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 593 (4th Cir. 2012). Thus, the ADA requires a plaintiff to file a charge with the Equal Employment Opportunity Commission. Id. §§ 2000e-5(b), (f)(1); Sydnor, 681 F.3d at 593. A failure to exhaust administrative remedies deprives the court of subject matter jurisdiction. Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 409 (4th Cir. 2013); Jones v. Calvert Grp., Ltd., 551 F. 3d 297, 300-01 (4th Cir. 2009). Accordingly, the issue is properly analyzed under Rule 12(b)(1). Agolli v. Office Depot, Inc., 548 F. App'x 871, 875 (4th Cir. 2013).

The exhaustion requirement serves two principal purposes: 1) it notifies the charged party of the asserted violation, and 2) it brings the charged party before the EEOC to secure voluntary compliance with the law. Balas, 711 F.3d at 406-07. Both of these purposes offer a benefit of encouraging quicker, less expensive resolution of disputes. Id.; Sydnor, 681 F.3d at 593.

In order to exhaust remedies, an employee must first contact the EEOC and present it with information supporting the allegations. Balas, 711 F.3d at 407 (citing 29 C.F.R. § 1601.6). Typically, the EEOC will then assist the individual in preparing a charge, send a notice and copy of the charge to the employer. Id. at 407. This gives the employer an opportunity to voluntarily investigate and resolve concerns internally as the EEOC conducts its own investigation. Id. If the EEOC finds "reasonable cause to believe that the charge is true," it may seek to eliminate unlawful employment practices through conference, conciliation, and persuasion. Id.; see 42 U.S.C. § 2000e-5(b). The EEOC may file a lawsuit or issue the employee a Notice-of-Right-to-Sue in the event the EEOC fails to reach a voluntary settlement with the employer, or if the EEOC does not find "reasonable cause to believe that the charge is true," or when the employee requests a right to sue. Balas, 711 F.3d at 407; see 29 C.F.R. §§ 1601.27-28).

12

In any subsequent lawsuit, the court "may only consider those allegations included in the EEOC charge" in order to determine whether plaintiff has exhausted her remedies. <u>Balas</u>, 711 F.3d at 407. If the claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, [the claims in the civil action] are procedurally barred." <u>Id.</u> at 407-08 (quoting <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 506 (4th Cir. 2005)). "[I]f the factual foundation in the administrative charge is too vague to support a claim that is later presented in subsequent litigation, that claim will also be procedurally barred." <u>Chacko</u>, 429 F.3d at 509. Moreover, "[a] claim in formal litigation will *generally* be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." <u>Jones</u>, 551 F.3d at 300 (emphasis added).

However, the administrative charge "does not strictly limit a . . . suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." <u>Chisholm v. United States Postal Serv.</u>, 665 F.2d 482, 491 (4th Cir. 1981); <u>see also</u> <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995) (holding claims barred which "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof."). "[I]f the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." <u>Chacko</u>, 429 F.3d at 509. Finally, "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." <u>Alvarado v. Bd. of Trs. of Montgomery Cnty. Cmty. Coll.</u>, 848 F.2d 457, 460 (4th Cir. 1988).

Before proceeding to consider the allegations in plaintiff's Charge of Discrimination, the court first considers the conduct prohibited by the ADA and the EEOC's regulations.  The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . the . . . discharge of employees."  42 U.S.C. § 12112(a).  Discrimination also includes "the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." Wilson v. Dollar Gen. Corp., 717 F.3d 337, 344 (4th Cir. 2013) (citing 42 U.S.C. § 12112(b)(5)(A)). A plaintiff may establish a "disability" through "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

Congress broadened the definition of "disability" with passage of the ADA Amendments Act of 2008, Pub. L. No. 110-325, in response to a series of Supreme Court decisions it believed had improperly restricted the act.  See Pub. L. No. 110-325, §§ 2, 4; Summers v. Altarum Inst., Corp., 740 F.3d 325, 329 (4th Cir. 2014).   Among its purposes, the ADA Amendments Act sought to convey Congressional intent "that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis."  Pub. L. No. 110-325, § 2(b)(5).

"Disability" is to be "construed in favor of broad coverage of individuals under this chapter [Chapter 126, 'Equal Opportunity for Individuals with Disabilities'] to the maximum extent permitted by [its] terms."  42 U.S.C. § 12102(4)(A).  The 2008 amendments included amendments

to the terms "major life activities" and "substantial limitation" for the purposes of defining "disability" under section 12102(1). As amended, the ADA provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). In addition, "major life activities" include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." Id., § 12102(2)(A)(B). The ADA, as amended, also directs that "[s]ubstantially limits" is to be "interpreted consistently with the findings and purposes" of the ADA Amendments Act. Id., § 12102(4)(B). Congress expressly directed the Equal Employment Opportunity Commission ("EEOC") to revise its regulations defining the term "substantially limits" to render them consistent with the broadened scope of the statute. Summers, 740 F.3d at 329 (citing Pub. L. No. 110-325, § 2(b)(6))

The EEOC revised its regulations to in 2011. See Regulations To Implement the Equal Employment Provisions of the Americans with Disabilities Act, as Amended, 76 Fed. Reg. 16978-01 (March 25, 2011).[1] These regulations note that the ADA amendments "expressly made [the] statutory list of examples of major life activities non-exhaustive." 29 C.F.R. Pt. 1630, App. § 1630.2(i). In addressing "major life activities," the regulations also added to the non-exclusive list of "major bodily functions" which could constitute "major life activities," including "cardiovascular" and "musculoskeletal functions." 29 C.F.R. § 1630.2(i). The regulations further provide that the EEOC "anticipates that courts will recognize other major life activities, consistent

_____

[1] Although the EEOC again revised its regulations in 2014, these revisions did not alter regulations discussed below.

with the ADA Amendments Act's mandate to construe the definition of disability broadly." 29 C.F.R. Pt. 1630, App. § 1630.2(i).

Acting under its Congressional directive, the EEOC revised regulations interpreting substantial limitations as well, noting that "[t]he term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and that the term "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). Elsewhere, the regulations specifically address whether temporary limitations could be "substantial" for purposes of disability. 29 C.F.R. Pt. 1630, App. § 1630.2(j)(1)(ix). These regulations provide that the "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." Id. App. § 1630.2(j)(1)(ix). Furthermore, although "impairments that last only for a short period of time are typically not covered . . . they may be covered if sufficiently severe." Id. As an example of a "sufficiently severe" temporary impairment, the regulations provide that, "if an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability." Id.

The regulations specifically address pregnancy, providing that "conditions, such as pregnancy, that are not the result of a physiological disorder are . . . not impairments." 29 C.F.R. Pt. 1630, App., § 1630.2(h). Nevertheless, the EEOC's regulations further state that a "pregnancy-related impairment that substantially limits a major life activity is a disability . . . . Alternatively, a pregnancy-related impairment may constitute a 'record of' a 'substantially limiting impairment,' or may be covered under the 'regarded as' prong if it is the basis for a prohibited employment action

and is not 'transitory and minor.'" 29 C.F.R. Pt. 1630, App. § 1630.2(h) (effective May 24, 2011 to present).

iii. Plaintiff's EEOC Charge

On November 18, 2013, plaintiff signed a "Charge of Discrimination," EEOC Form 5. (Def's. Memo. in Supp. Re: Mot. to Dismiss, Ex. 1) (DE 1). In a section requesting the basis for discrimination, plaintiff checked a box marked "SEX." (Id., 1). Plaintiff left unchecked a box marked "DISABILITY." (Id.). The allegations appearing on the form provide as follows:

I. On September 26, 2013, I was discharged from the position of Law Enforcement Officer. Wake Forest Police Department employs more than fifteen (15) persons.

II. I informed the Wake Forest Police Department that I was pregnant. Chief Jeffrey Leonard informed me that I was discharged because there were no light duty assignments available.

III. I believe I have been discriminated against because of my sex, pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Id.).

The facts alleged in the formal Charge of Discrimination, while scant, are reasonably related to the facts alleged in plaintiff's ADA claim. Reasonable investigation of this charge would have inquired into the reasons for plaintiff's termination, the nature of the Town's light duty policy, and whether plaintiff should have qualified for that light duty policy. That investigation would further have discovered the physical restrictions that plaintiff's doctors had recommended for her.

Plaintiff alleges that her doctors' restrictions included a complete restriction from running, jumping, or lifting more than 20-25 pounds. (Compl., ¶ 88). One of the notes from plaintiff's doctors allegedly stated that plaintiff "should be placed in a light duty position, preferably clerical or administrative for the duration of her pregancy." (Id., ¶ 24). The note from Dr. Kennedy faxed September 24, 2013, states that "[a]s the pregnancy progresses the limitations may be lifting if

17

condition resolves. [sic]" (Pl's Memo. In Supp. of Resp., Ex. 4). Construing the facts in the light most favorable to plaintiff, her lifting restriction could have lasted for at least several months.[2] In light of the revisions to the ADA and the EEOC's own regulations, promoting an expansive definition of disability to include temporary limitations, these physical limitations were sufficient to apprise the EEOC that plaintiff had a disability. Given that plaintiff was terminated when defendants learned of her physical limitations, and defendants' statements indicate that these physical limitations were the basis of her termination, an ADA charge would naturally have arisen from investigation of these facts.

Plaintiff's allegations regarding discrimination on the basis of pregnancy are sufficiently intertwined with her allegations of discrimination on the basis of disability such that investigation of the former would reasonably and naturally give rise to charges under the latter. Accordingly, plaintiff adequately exhausted her remedies regarding her ADA claim.

      b.     Failure to State a Claim

Not only do these facts indicate that a charge of ADA discrimination would naturally have arisen from plaintiff's EEOC Charge of Discrimination, they are also sufficient to state a plausible claim of relief. The Fourth Circuit recently had occasion to consider the new ADA Amendments Act and the ensuing EEOC regulations. Summers, 740 F.3d at 328-33. There, the court considered whether Summers had alleged sufficient facts to establish disability in alleging broken bones and torn tendons in his legs which left him unable to walk for seven months. Id. at 327, 330. The Fourth Circuit surveyed the revised EEOC regulations, including the regulation that a 20-pound lifting

---

[2] As noted, plaintiff alleges that she discovered she was pregnant through a home pregnancy test on September 4, 2013. (Compl., ¶ 18). It is unclear how long plaintiff had been pregnant at the time of her discovery, or when plaintiff's date of delivery was expected.

restriction for several months constituted a substantial limitation in the major life activity of lifting. Id. at 329. The court took noted expressly that the ADA Amendments Act had abrogated pre-amendments case law. Id. at 331. It went on to hold that the EEOC regulations regarding temporary impairments were reasonable, and applied those regulations to the facts alleged to find that Summers had sufficiently alleged disability on the basis of a substantial limitation to his musculoskeletal system. Id. at 331-32.

Plaintiff alleges that she had three doctors' notes instructing that she "lift not more than 20 to 25 pounds, run, jump, or have any potential physical altercations." (Compl., ¶ 87). Under the new regime enacted by amendments to the ADA and the EEOC's regulations, plaintiff's allegations as to her restrictions of lifting, running and jumping are sufficient to establish that she had a substantial impairment, or had a record of such impairment.

The court acknowledges well-established federal court precedent that pregnancy alone is not a "disability" for purposes of the ADA. Young v. United Parcel Serv., Inc., 707 F.3d at 443 ("With near unanimity, federal courts have held that pregnancy is not a 'disability' under the ADA.") (quoting Wenzlaff v. NationsBank, 940 F. Supp. 889, 890 (D. Md. 1996)), vacated and remanded on other grounds, — S. Ct. —, 2015 WL 1310745. Moreover, the Fourth Circuit has held that a temporary 20 pound lifting restriction on account of pregnancy is insufficient to show disability. Young, 707 F.3d at 445, vacated and remanded on other grounds, — S. Ct. —, 2015 WL 1310745 (2015). In so holding, however, the court relied upon prior cases holding that "temporary impairments usually do not fall within the ADA's limitation of 'disability,'" Pollard v. High's of Baltimore, 281 F.3d 462, 468 (4th Cir. 2002), and also holding "as a matter of law, that a twenty-five pound lifting limitation . . . does not constitute a significant restriction on one's ability to lift,

work, or perform any other major life activity," <u>Williams v. Channel Master Satellite Sys., Inc.</u>, 101 F.3d 346, 349 (4th Cir. 1996), <u>abrogated on other grounds by Baird <i>ex rel.</i> Baird v. Rose</u>, 192 F.3d 462, 470 (4th Cir. 1999).

However, Young had only presented evidence regarding a lifting restriction, not other evidence regarding an inability to run or jump. More significantly, <u>Young</u>, <u>Pollard</u>, and <u>Williams</u> all involved interpretations of the ADA as it existed prior to the 2008 amendments. <u>See</u> <u>Young</u>, 707 F.3d at 443, n.7 ("Because Young filed her claim before the effective date of the amendments, which Congress did not make retroactive, we do not consider how, if at all the . . . amendments would affect Young's ADA claims."). In light of these differences, coupled with the ADA amendments and the Fourth Circuit's approval of the EEOC's temporary impairment regulations in <u>Summers</u>, <u>Young</u>, <u>Pollard</u> and <u>Williams</u> are inapposite.

Separately from their argument that plaintiff was not disabled under the ADA, defendants also assert that they tried to accommodate plaintiff by checking to see whether a light duty position within plaintiff's restrictions was available, but that no such position was available. (Def's. Memo. In Supp. Re: Mot. To Dismiss, 12). As with defendants' arguments under the PDA, however, this argument again asserts facts that lie beyond the scope of the complaint; in particular, whether a light duty position was in fact available or could have been created for plaintiff. While defendants cite to the complaint for support, the cited paragraphs simply allege what plaintiff had been told by defendant Jones and others; the truth of those statements is not conceded. The email exchange between defendants Jones and Leonard is likewise insufficient, at the motion to dismiss stage, to establish that no light duty positions existed or could have been made available for plaintiff.

Having found the complaint sufficiently alleges disability, and where defendants do not raise arguments concerning remaining elements of an ADA claim other than those addressed above, dismissal of the claim is unwarranted.

4.      Wrongful Discharge in Violation of Public Policy

Under North Carolina law, an employment relationship is generally presumed to be terminable at the will of either party at any time and without reason.  Coman v. Thomas Mfg. Co., Inc., 325 N.C. 172, 175 (1989).  However, section 143-422.2 of the North Carolina General Statutes provides that

> [i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2.

The statute itself does not include a private right of action.  Nevertheless, North Carolina courts have held that North Carolina would recognize a common law claim for wrongful discharge in violation of public policy based on allegations that a plaintiff was fired because of her sex, or handicap.  Hughes v. Bedsole, 48 F.3d 1376, 1383, n. 6 (4th Cir. 1995); Sidhu v. Cancer Ctrs. of N.C., P.C., No. 5:12-CV-603-FL, 2013 WL 2122958, at *4 (E.D.N.C. May 15, 2013); Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003).

It remains unclear whether North Carolina's  general public policy against discrimination based on sex or handicap would include the nature of the discrimination alleged here, regarding pregnancy or related medical conditions.  See Leonard v. Wake Forest Univ., 877 F. Supp. 2d 369, 374 (M.D.N.C. 2012) (deferring decision on whether plaintiff's pregnancy discrimination claim was cognizable until after discovery, due to "the absence of settled state court precedent or a clearly

expressed public policy in either the general statutes or constitution of North Carolina," as well as "the important policy considerations involved," and the possibility that discovery would disclose an alternate ground for dismissal); Blount v. Carlson Hotels, Inc., No. 3:11-CV-452-MOC-DSC, 2012 WL 1021735, at *8 (W.D.N.C. March 1, 2012) (noting that "[n]o North Carolina court has addressed whether [N.C. Gen. Stat. § 143-422.2] encompasses a claim of pregnancy discrimination," but assuming that such claim would be cognizable and recommending denial of motion to dismiss), memo. and rec. adopted, 2012 WL 1019507 (W.D.N.C. March 26, 2012). Defendants here do not expressly ask the court to resolve this issue, but rather assert that plaintiff's claim should be dismissed because her Title VII/PDA claim is also subject to dismissal. (Memo. In Supp. of Mot. To Dismiss, 13). Because the court has denied defendants' motion to dismiss plaintiff's PDA claim, it denies defendants' motion to dismiss plaintiff's wrongful discharge claim as well.

  5.  Civil Conspiracy

  In North Carolina, a civil conspiracy consists of 1) an agreement between two or more individuals, 2) to do an unlawful act or to do a lawful act in an unlawful way, 3) resulting in injury to the plaintiff inflicted by one or more of the conspirators, 4) pursuant to their common scheme. Iglesias v. Wolford, 539 F. Supp. 2d 831, 835 (E.D.N.C. 2008). Concerning the first element, the intracorporate immunity doctrine provides that "[a] corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation." Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985) (quoting Nelson Radio & Supply Co. v. Motorola, Inc., 200 F.2d 911, 914 (5th Cir. 1952)). The doctrine applies to municipalities as well as corporations. Fox v. City of Greensboro, 807 F. Supp. 2d 476, 499 (M.D.N.C. 2011); Iglesias, 539 F. Supp. 2d at 835-36 (E.D.N.C. 2008).

Plaintiff asserts that the doctrine of intracorporate immunity does not apply here because "the benefit of the outcome of the conspiracy is to the advantage of the conspirators rather than the Town of Wake Forest," arguing that Individual Defendants stood to benefit "by not having to deal with pregnancy claims and disability claims related to pregnancy by a female employee." (Pl's. Resp., 16-17). While an exception to intracorporate conspiracy exists where an agent has an "independent personal stake" in the conspiracy, that exception has been limited to require a personal *financial* stake. Oksanen v. Page Mem'l Hosp., 945 F. 2d 696, 705 (4th Cir. 1991); Iglesias, 539 F. Supp. 2d at 837; Mbadiwe v. Union Mem'l Regional Med. Ctr., Inc., No. 3:05-CV-49, 2005 WL 3186949, at *3 (W.D.N.C. Nov. 28, 2005); Culver v. JBC Legal Grp., P.C., No. 5:04-CV-389-FL, 2005 WL 5621875, at *7 (E.D.N.C. June 28, 2005); Turner v. Randolph Cnty., N.C., 912 F. Supp. 182, 186 (M.D.N.C. 1995). The incentives that plaintiff attributes to Individual Defendants do not fall within the limited scope of this exception.

Because the intracorporate immunity doctrine applies to the civil conspiracy alleged here, and plaintiff has not alleged facts to show an exception, plaintiff's civil conspiracy claim is dismissed.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 10) is GRANTED in part, and DENIED in part. The court GRANTS defendants' motion to dismiss as it pertains to defendants Williams, Jones, and Leonard, and as it pertains to plaintiff's claim for civil conspiracy. Defendant Town of Wake Forest's motion is DENIED as it pertains to plaintiff's claims under the PDA and ADA, and plaintiff's claim for wrongful discharge. The stay on further proceedings is hereby LIFTED. The parties are to file a joint supplemental Rule 26(f) report within twenty-one (21) days

of this order, providing the information specified in the initial order entered in this case June 18, 2014.

SO ORDERED, this the 3rd day of April, 2015.

LOUISE W. FLANAGAN
United States District Judge